**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yama Elham, | No. CV-11-02372-PHX-NVW (LOA) |
| Petitioner, | **ORDER** |
| vs. | |
| Kevin Kane, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus by Person in State Custody pursuant to 28 U.S.C. §2254. (Doc. 7)  Respondents filed an Answer, doc. 17, to which Petitioner has not replied and the deadline has passed. For the reasons set forth below, the Petition is denied.

**I. Factual and Procedural Background**

Following a two-day jury trial, Petitioner was convicted in Phoenix Municipal Court, case # CR2009-9016994, of extreme driving under the influence ("DUI"). (Respondents' Exh. D at 191-94[1])  Petitioner was represented at trial by counsel, Shab Amiri, and admitted to two prior DUI convictions. (*Id.* at 196-206; Respondents' Exh. F-G)  On November 10, 2009, Petitioner was sentenced to 180-days imprisonment. (Respondents' Exh. D at 191-94, 215-23; Exh. E)

---

[1] Citations to "Respondents' Exh. __" are to Exhibits to Respondents' Answer to Petition for Writ of Habeas Corpus, doc. 17.

**A. Direct Appeal**

On November 17, 2009, Petitioner filed a notice of appeal in Phoenix Municipal Court, through attorney Colby Kanouse. (Respondents' Exhs. H-I) On Petitioner's motions, the final deadline for filing an opening brief was set as March 2, 2010. (Respondents' Exh. J at 6; Exh. K) On March 1, 2010, Petitioner filed a notice of abandonment of appeal and request for re-imposition of sentence, stating that, "after a review of the trial transcripts [Petitioner was] abandoning his right to appeal the jury's verdict." (Respondents' Exh. L) On or about March 3, 2010, the Phoenix Municipal Court dismissed the appeal as "non-perfected" and ordered Petitioner to appear at a later date for re-imposition of sentence. (Respondents' Exh. J at 6; Exh. M-N) On March 25, 2010, the trial court affirmed its earlier concurrent sentences of 180 days in jail for each count of conviction. (Respondents' Exh. O)

On or about March 25, 2010, Petitioner, through counsel, filed a notice of post-conviction relief ("PCR") and motion to stay execution of sentence pending the outcome of the PCR in the Municipal Court. (Respondents' Exh. J at 7; Exhs. P-Q) On Petitioner's motion, the court extended the deadline for filing the PCR to June 25, 2010. (Respondents' Exh. J at 9; Exhs. R-S)

**B. Post-Conviction Proceedings**

On June 24, 2010, Petitioner filed a PCR, claiming that counsel was ineffective for failing to secure a Dari speaking interpreter; and that the "proper interpretation" of defense witnesses' testimony amounted to newly-discovered evidence that would have changed the verdict. (Respondents' Exh. T) On October 25, 2010, the court summarily denied relief. (Respondents' Exh. J at 9; Exh. U) On Petitioner's motion, the court stayed execution of Petitioner's sentence pending review in the Superior Court. (Respondents' Exhs. J at 9; Exh. X)

On November 24, 2010, Petitioner, through counsel, filed a petition for review with the Maricopa County Superior Court. (Respondents' Exh. Y) Petitioner raised the same arguments he had asserted in his PCR and argued that the trial court abused its discretion by summarily denying relief. (*Id.*) After hearing oral argument, the court denied relief on May 11,

2011. (Respondents' Exhs. Z, AA-CC)

### C. Special Action Proceedings

On June 14, 2011, Petitioner, through counsel, filed a petition for special action with the Arizona Court of Appeals. (Respondents' Exh. DD) On June 16, 2011, the appellate court summarily declined to accept special action jurisdiction. (Respondents' Exh. EE) On June 24, 2011, Petitioner, through counsel, filed a petition for review in the Arizona Supreme Court. (Respondents' Exhs. FF-GG) The Arizona Supreme Court summarily denied review for lack of jurisdiction on November 9, 2011. (Respondents' Exhs. HH-JJ)

### D. Petition for Writ of Habeas Corpus

On December 1, 2011, Petitioner, through counsel, filed a timely[2] Petition for Writ of Habeas Corpus. (Doc. 1) In accordance with the Court's Order, doc. 8, on December 14, 2011, Petitioner filed an Amended Petition for Writ of Habeas Corpus, asserting that he received ineffective assistance of counsel in violation of the Sixth Amendment because trial counsel failed to obtain a Dari interpreter to interpret the testimony of two Dari speaking defense witnesses. (Doc. 7 at 6) Respondents assert that Petitioner's claims lacks merit. (Doc. 17) Petitioner has not filed a reply. As set forth below, Petitioner has failed to establish that he is entitled to habeas corpus relief.

## II. Standard of Review

This Court's review of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet."

---

[2] Respondents concede that the Petition is timely in accordance with the applicable one-year statute of limitations. (Doc. 17 at 5-8); 28 U.S.C. § 2244(d)(1)). The record supports Respondents' conclusion that the Petition is timely.

*Harrington v. Richter*, 562 U.S., ___ , 131 S.Ct. 770, 786 (2011). Section "[2]254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Id*. (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

If an habeas corpus petition includes a claim that has been "adjudicated on the merits in State court proceedings," federal habeas relief is not available unless it is shown that the state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011); *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Richter*, 131 S.Ct. at 785; *see also Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). This is a "difficult to meet," *Richter*, 562 U.S. ___, 131 S.Ct. at 786, and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation marks omitted). The petitioner bears the burden of proof. *Id*. at 25.

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Green*, 132 S.Ct. at 44. Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Id.* at 405; *Brown v. Payton*, 544

- 4 -

U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Id.* The Court will consider Petitioner's claims in view of the foregoing standard.

## III. Discussion

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). When seeking habeas relief, a petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The record reflects, and Respondents do not dispute, that Petitioner properly exhausted the available state remedies and that his Sixth Amendment claim of ineffective assistance is properly before this Court on habeas corpus review. Thus, the Court turns to the merits of Petitioner's claim.

### A. Controlling Supreme Court Precedent

The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of

counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Id.* at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart*, 174 F.3d at 1069; *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The court may proceed directly to the prejudice prong. *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697). A court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

"'Surmounting *Strickland's* high bar is never . . . easy.'" *Richter*, 131 S.Ct. 770, 786 (quoting *Padilla v. Kentucky*, __ U.S.___, 130 S.Ct. 1473, 1485 (2010)). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult, because both standards are "highly deferential," and because *Strickland's* general standard has a substantial range of reasonable applications. *Richter*, 131 S.Ct. at 788 (citations omitted). The issue under § 2254(d) is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

**B. Analysis**

Petitioner contends that his trial counsel, Shab Amiri, was ineffective because she obtained a Farsi interpreter, rather than a Dari interpreter, for use during trial and, thus, the testimony of two defense witnesses was misinterpreted and resulted in an "unjust verdict." (Doc. 7 at 6) Petitioner raised this claim on post-conviction review. (Respondents' Exh. T) The

- 6 -

court rejected Petitioner's claim without discussion. (Respondents' Exh. J at 9; Exh. T-U) Even though the state court neither explained its ruling nor cited United States Supreme Court authority, this Court must nevertheless examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Citation to federal law is not required and compliance with the habeas statute "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one, has been adjudicated." *Richter*, 131 S.Ct. at 784. Thus, this Court will review the state court's decision to determine whether its rejection of Petitioner's claim of ineffective assistance of counsel was contrary to, or an objectively unreasonable application of, *Strickland*, or whether it was based on an unreasonable determination of the facts. *Robinson*, 360 F.3d at 1055.

      Petitioner contends that counsel was ineffective for obtaining an interpreter who spoke Farsi to interpret the testimony of two Dari-speaking defense witnesses - Karim Elham and Nazila Elham. (Doc. 7 at 6-7) Ms. Shab Amiri was appointed to represent Petitioner at trial, she is fluent in Farsi. (Doc. 17-2, Respondents' Exhs. G, U - affidavit of Shab Amiri at 98) Before trial, Amiri "had many conversations" with Petitioner and his wife, Nazila, and spoke with them in English and Farsi. (Respondents' Exh. U, affidavit of Shab Amiri) Nazila responded appropriately to Amiri's questions and neither Petitioner nor his wife expressed any difficulty understanding her. (*Id.*) Significantly, Petitioner told Amiri that Nazila and Karim, the two defense witnesses, both spoke Farsi. (*Id.*) Based on this information from Petitioner, defense counsel requested that the municipal court provide a Farsi interpreter for the defense witnesses. (Respondents' Exh. KK) Before trial, Amiri interviewed Karim Elham in the presence of Petitioner and the interpreter, Shahla Charoosaie, who was used later at trial. (Doc. 17-2, Respondents' Exh. U, affidavit of Shab Amiri, at 98) Petitioner's nephew, a defense

1 witness, "Karim Elham was asked the same or similar questions, as were asked during the
2 subsequent trial, and he "had no trouble responding to the questions[, nor did he ever indicate
3 that] he did not understand the interpreter." (*Id*., ¶¶ 9-10) Likewise, the "interpreter never
4 indicted that was having trouble communicating the Karim or Nazila." (*Id*, ¶ 11).

5       During trial, Mr. Jafri, one of the accident victims, identified Petitioner as the driver,
6 and testified that he heard Karim Elham say, "I told him not to drive but he still drove."
7 (Respondents' Exh. D at 15-19, 24; Exh. U at 3)  Further, several police officers testified that
8 Petitioner admitted to being the driver of the vehicle several times. (Respondents' Exh. D at 46-
9 48, 70-71, 94, 125-26; Exh. U at 3-4)  After the State rested, a Farsi interpreter was provided
10 for both defense witnesses, without objection from the witnesses or Petitioner regarding the
11 accuracy of the interpretation of their testimony.  (Respondents' Exh. D at 95, 133-56; Exh. U,
12 ¶¶ 10, 12-13) Karim Elham testified that he was driving when the accident occurred, and that
13 Petitioner was too drunk to drive. (Respondents' Exh. D at 145-59, 155; Exh. U at 5-6)  During
14 closing arguments, defense counsel argued that Karim, not Petitioner, was the driver of the
15 vehicle at the time of the accident and that police had mistakenly identified Petitioner as the
16 driver. (Respondents' Exh. D at 169-78; Exh. U at 6)  Following Petitioner's conviction, Amiri
17 "had a lengthy conversation" with Petitioner and his wife, and "[n]either one indicated that the
18 interpreter was unable to accurately interpret the testimony of the defense witnesses."
19 (Respondents' Exh. U, Shab Amiri affidavit, ¶ 14 at 98)

20       Petitioner argues that he and his two witnesses "all hail from Afghanistan, and speak
21 a dialect known as Dari." (Doc. 7 at 6) Petitioner has admitted he "speaks English and d[id] not
22 require an interpreter." (Respondents' Exh. T at 2)  Petitioner has also stated that Farsi "is
23 grammatically similar to Dari," but claimed that some of the "words used in conversational Dari
24 are different than those used by Farsi speakers." (*Id*. at 2, 6)  Petitioner alleges that because
25 counsel arranged for a Farsi, as opposed to Dari, interpreter, the witnesses' testimony was not
26 interpreted correctly. (Doc. 7 at 6)

27       To establish ineffective assistance of counsel under *Strickland*, a petitioner must show
28 that counsel's performance was objectively deficient and that counsel's deficient performance

- 8 -

1  prejudiced the petitioner. *Id.* at 687; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999). To
2  be deficient, counsel's performance must fall "outside the wide range of professionally
3  competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance,
4  the court engages a strong presumption that counsel rendered adequate assistance and exercised
5  reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that
6  every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
7  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
8  perspective at the time." *Id.* at 689.

9        Under *Strickland's* deferential standard, Petitioner's counsel reasonably relied on
10 Petitioner's express statement that his two witnesses, Nazila Elham and Karim Elham, needed
11 a Farsi interpreter. At no time before trial did Petitioner indicate that he had difficulty
12 understanding counsel who spoke both English and Farsi. Before trial, counsel spoke with
13 Petitioner's wife and had no problem communicating with her in English and Farsi. Counsel
14 interviewed Karim Elham, in Petitioner's presence, before trial with the interpreter who was
15 used at trial and had no difficulty communicating.

16       During trial, Nazila Elham testified that she "speak[s] some English" and stated that
17 she would tell the interpreter if she needed his help. (Respondents' Exh. D at 134)  After a brief
18 bench conference with defense counsel, the prosecutor, and the court, it was decided that Nazila
19 would testify through the interpreter. (Respondents' Exh. D at 136)  However, the record
20 reflects that she frequently responded in English to counsel's questions that had been interpreted
21 in Farsi. (Respondents' Exh. D at 136-142)  During trial, Karim Elham, Petitioner's nephew,
22 testified that his English "[is] good. It's a little - - it's good." (Respondents' Exh. D at 145) And
23 stated that he "can speak a little English." (*Id.*) Although at one point during trial, the interpreter
24 indicated that Karim spoke "a little bit different dialect," defense counsel addressed the situation
25 by simplifying the question. (Respondents' Exh. D at 147)  Counsel had no indication before
26 trial that Petitioner or either of the two defense witnesses had such difficulty understanding her
27 or the Farsi interpreter who interpreted at trial that a Dari interpreter was necessary. And, during
28 trial, when an issue of the different dialect was raised, counsel addressed the issue and the

testimony proceeded. (Respondents' Exh. D at 147) In determining whether counsel's performance was deficient, tactical decisions of trial counsel deserve deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). The record reflects that counsel's decision to obtain a Farsi interpreter was a reasonable choice. *See U.S. v. Quesada-Garcia*, 2011 WL 5554618, * 8 (E.D.Cal. Nov. 15, 2011) (rejecting claim that counsel was ineffective for failing to obtain an interpreter where the record reflected that petitioner never expressed an inability to understand counsel or a need for an interpreter). Petitioner has not shown defense counsel's performance fell outside the realm of professionally competent assistance by failing to request a Dari interpreter because Petitioner has not shown that counsel was aware of any such need. *See Gonzalez v. United States*, 33 F.3d 1047, 1051 (9th Cir. 1994) (finding counsel's failure to request an interpreter reasonable were record supported counsel's belief that defendant understood English). Petitioner has not shown the state court's rejection of his claim of ineffective assistance based on the failure to obtain a Dari interpreter was contrary to, or an unreasonable application of, *Strickland*.

Having determined that counsel's performance was not deficient, and that the State court's determination on that prong was not an unreasonable application of *Strickland*, the Court need not consider *Strickland's* prejudice prong. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other."). However, even if counsel's performance was deficient for failing to request a Dari interpreter, Petitioner has not carried his heavy burden of showing "that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694 (emphasis added). Even if the defense witnesses' testimony was not interpreted, and thus relayed to the jury, in as precise a manner as Petitioner would have liked, the crux of Petitioner's theory of defense - that he was not the driver - was conveyed. Nazila testified that she did not accompany Petitioner to the party the night of the accident, but that he made

1 arrangements to attend with Karim so Karim could drive him home. (Respondents' Exh. D at
2 137-38) Karim testified he went with Petitioner to a party because Petitioner planned on
3 drinking. (Respondents' Exh. D at 145) Karim stated that he did not plan to drink at the party.
4 (*Id.*) Karim testified that Petitioner drove to the party, and that Karim drove home because
5 Petitioner "was a little drunk." (*Id.* at 146) On the way home, Karim felt that the car's brakes
6 weren't working well and he rear ended a car. (*Id.*) He explained that he exited the vehicle first
7 and that Petitioner had to exit through the driver's side because the car was "smoking" and he
8 was unable to exit through the passenger door. (*Id.* at 148) Defense counsel emphasized during
9 closing argument that Karim, not Petitioner, was the driver. Counsel explained that Petitioner
10 was mistaken as the driver because he had exited the car from the driver's side because the car
11 "was smoking." (Respondents' Exh. D 171) Thus, despite any alleged inaccurate interpretation
12 of the defense witnesses' testimony, the defense theory was presented to the jury. The State's
13 evidence, however, was strong. The State presented three police officers who testified that on
14 separate occasions, Petitioner admitted to each of them that he was driving at the time of the
15 accident. (Respondents' Exh. D at 46, 48, 70-71, 126) Additionally, an accident victim
16 identified Petitioner as the driver. (Respondents' Exh. D at 15-17)

17 In short, Petitioner has not shown that there is a "reasonable probability that, but for
18 counsel's [failure to obtain a Dari interpreter], the result of the proceeding would have been
19 different." 466 U.S. at 694; *Hart*, 174 F.3d at 1069. Accordingly, his claim of ineffective
20 assistance of counsel fails.

21 **IV. Conclusion**

22 For the reasons set forth above, Petitioner is not entitled to habeas corpus relief
23 because he has not met his burden of establishing that the State courts unreasonably applied
24 *Strickland*. 28 U.S.C. § 2254(d).

25 Accordingly,

26 **IT IS ORDERED** that the reference of the Amended Petition for Writ of Habeas
27 Corpus to Magistrate Judge Anderson is withdrawn.

28

- 11 -

**IT IS FURTHER ORDERED** that the Amended Petition for Writ of Habeas Corpus, doc. 7, is **DENIED.**

DATED this 4th day of May, 2012.

_____
Neil V. Wake
United States District Judge

- 12 -